UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| *Donna Godin*, | ) | |
| 30 Alpine Street | ) | Civil Action No.: _____ |
| Gorham, NH 03581 | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S COMPLAINT FOR** |
| *Androscoggin Valley Hospital*, | ) | **DAMAGES AND OTHER RELIEF** |
| 59 Page Hill Road | ) | |
| Berlin, NH 03570 | ) | |
| and | ) | **JURY TRIAL DEMANDED** |
| *North Country Healthcare* | ) | |
| 8 Clover Lane | ) | |
| Whitefield, NH 03598 | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff, Donna Godin ("Donna" or "Plaintiff"), by and through the

undersigned Counsel, and for her Complaint for Damages and Other Relief, states as follows:

JURISDICTION/CAUSE OF ACTION/VENUE

1.  This Court has jurisdiction pursuant to 28 U.S.C. §1331.

2.  Donna brings her Federal disability discrimination claims pursuant to the Americans with

    Disabilities Act as Amended ("ADA") 42 U.S.C. §12101, *et seq*., and her related request

    for attorney's fees is brought pursuant to 42 U.S.C. §1988.

3.  Donna brings her Federal religious discrimination claims pursuant to Title VII of the

    Civil Rights Act of 1964, as Amended ("Title VII") 42 U.S.C. §2000-e, *et seq*., and her

    related request for attorney's fees is brought pursuant to 42 U.S.C. §1988.

4.  Venue is appropriate in this Court because the Defendants' wrongful conduct occurred in

    New Hampshire.

PARTIES

5.    At all relevant times, Donna has been a citizen of New Hampshire, an individual with a

      disability as defined by the ADA, and a person with sincerely held religious beliefs as

      defined by Title VII.

6.    At all relevant times, Defendant Androscoggin Valley Hospital ("AVH") was, and is, a

      hospital located in Berlin, New Hampshire.

7.    At all relevant times, Defendant North Country Healthcare ("NCH") was, and is, a

      healthcare business and the parent company of AVH, located in Whitefield, New

      Hampshire.

PROCEDURAL REQUIREMENTS

8.    Donna filed a Charge of Discrimination with the Equal Employment Opportunity

      Commission (hereinafter "EEOC") within 300 days of the occurrences of the unlawful

      acts.

9.    In that Charge, Donna alleged violations of the ADA and Title VII, alleging failure to

      accommodate disability and religious beliefs and wrongful discharge.

10.   Donna brought this action within 90 days of the EEOC providing notice that it did not

      intend to continue investigating the charge and closing the case.

FACTS

11.   Donna is an individual with a disability as defined by the ADA.  Specifically, she has

      been diagnosed with paroxysmal supraventricular tachycardia ("PSVT"), which can lead

      to congestive heart failure and/or angina if other disorders develop.  Additionally, the

      condition causes her to become light headed, and it can cause her to pass out.  The

      condition, when triggered, affects Donna's ability to work, stand, sit, and other major life

activities.  If it progresses to heart failure or angina, it would also affect breathing, blood circulation, and remaining alive.

12.     Donna is also a Christian, and she sincerely holds and follows beliefs related thereto.  She is morally opposed to abortion.  She follows the belief that the human body is a Temple of the Holy Spirit and that God designed the human body perfectly.  Relatedly, it is her sincere belief that that design should not be chemically altered.  She also exhibits a strong commitment to other Christians.

13.     Donna had worked for AVH for 31 years at the time of her termination. At the time of her termination, Donna was a Public Relations and Marketing Assistant, working under the supervision of the Senior Director, Patient Experience and Marketing, providing administrative and clerical support to the Senior Director and Volunteer Coordinator and Auxiliary and its associated fund-raising events.

14.     In her position, Donna's essential functions included updating waiting area/lobby TV monitors, employee intranet, and website, as well as creating, designing, editing, updating, printing, uploading and publishing advertisements, slides, business cards, appointment cards, brochures, booklets, posters, flyers, forms, letters, envelopes, certificates, labels and other documents. Most print items could be printed internally using the hospital's color printer and a small desk printer. Some items were emailed to a local business for professional printing. Donna also processed donations, maintained donor spreadsheets, and sent thank you letters. She developed and distributed news releases. She proofread the hospital monthly newsletter, letters, newsletter articles, and other documents. She coordinated professional photo appointments and ordered lab coats for new providers. She updated lists and directories including the hospital-wide

communication directory. She updated social media channels. All of this work was performed using a computer and the hospital's color printer and a small desk printer.

15.     Donna worked mostly remote during the pandemic. She was able to perform the essential functions of her job remotely. Indeed, she used a computer at her home, and if she needed to print in color, she would electronically send most files directly to the AVH's color printer for printing. On occasion, she would ask her boss for assistance in printing a file on special paper that was not housed in the color printer. If paper cutting, binding or laminating was required, she would bring them to the first floor Welcome Center staff who would assist her.  In doing so, she would always comply with Defendants' covid-19 protocols.

16.     Because she worked mostly remote, she had little contact with others.  Her patient contact was extremely limited even prior to covid, as her job description limits her contacts to staff, volunteers, providers, and vendors.

17.     On or about August 3, 2021, the Defendants adopted a mandatory covid-19 vaccine policy requiring all employees to be vaccinated or apply for an accommodation for medical and/or religious reasons.  However, the NCH CEO, Thomas Mee, explained, "if you are counting on an exemption, it's probably not a very solid plan."  He also explained that he anticipated that there would be very few exemptions approved.

18.     On September 7, 2021, Donna submitted a medical exemption request.  Donna's medical provider explained that in her professional opinion, it would not be safe for Donna to receive a covid-19 vaccination.  Her medical provider also explained that the exemption should be permanent.  Therefore, Donna requested an accommodation from having to take the vaccine.

19.    On September 9, 2021, the NCH Medical and Religious Exemption Review Committee

Staff ("NCH Committee") reviewing Donna's Request, denied it.  However, the NCH

Committee did ask for, "additional information from your treating provider to help better

determine if your medical situation warrants a deferral or exemption...Specifically, we

require an evidence-based medical explanation and information from your medical

provider as to why receiving covid-19 vaccination is contraindicated for you..."

20.    After that, Donna reached out to her medical provider informing her that the NCH

Committee denied her request.  The medical provider was shocked.  She then wrote a

letter on her Clinic's letterhead providing the information requested.  She explained, "Ms.

Godin has a medical history significant for PSVT and cardiac ablation.  Based on her

medical condition, she should qualify for a medical waiver for the covid vaccine.  This is

based on studies that show a link between the vaccine and higher risk for myocarditis and

pericarditis.  There are no long term studies to know if the vaccine can cause other

adverse cardiac reactions."  Had Donna developed myocarditis or pericarditis, or other

heart disorders, it could cause Donna's PSVT condition to lead to congestive heart

failure.

21.    On September 17, 2021, with her medical provider's letter, Donna submitted a follow-up

medical exemption request.

22.    On September 23, 2021, the NCH Committee again denied her request.  It stated that the

medical reasons were, "not related to recognized risks of vaccination and do not make

you ineligible to receive covid-19 vaccines."

23.    Donna and her medical provider were once again shocked.  Myocarditis was already a

known adverse reaction to the covid-19 vaccines, and that is one of the reasons why

Donna's medical provider stated that exemption should be permanent for her.

24.    Following this, on October 4, 2021, Donna submitted a request for a religious exemption. She included a personal letter addressing the NCH Committee.  As a Christian (follower of Jesus Christ), Donna explained why she cannot receive the covid-19 vaccination:

    a.    "The presence of and use of immortalized human cell lines taken against the will of the person(s) aborted having been used in the development of vaccinations, cause my firm belief that participation in the North Country Healthcare covid-19 Vaccination Policy and covid-19 vaccination is an indirect engagement and participation in abortion. This alone is a violation of the constitutionally protected right to life as stated in our founding and presently held documents."

    b.    "The presence of hazardous substances, attenuated viruses, animal cells, foreign DNA, albumin from blood, carcinogens, and chemical wastes is in strict violation of my health convictions and conscience."

    c.    "The covid-19 vaccine, with its numerous additives, mRNA, and its mechanism for altering my body, is against my life practice and a violation of my freedom. The covid-19 vaccines get into cells to create spike protein, thereby altering God's Perfect Design of the human cell and altering it, and my body is a Temple of the Holy Spirit."

    d.    "Freedom being a privilege that must be maintained, and that freedom being purchased at great expense by others in our historical past, requires that I honor those sacrifices with due respect. We owe to those present and those of future generations the same freedoms whereby we have benefited. Therefore, I

make my stand in defense of those earlier pioneers and stand with them in

solidarity lest our freedoms be forfeited."

e.  "Participation in the covid-19 vaccination program presently offered is a

violation of my deeply held religious beliefs, as well as the influenza

vaccination program. In writing this exemption letter and in doing research, I

learned that pharmaceutical companies have been using fetal stem cell lines to

research multiple vaccines, including the influenza vaccine. In light of this, I

do not plan to take the influenza vaccine going forward."

f.  "The short-term and long-term effects of other vaccinations have proven

detrimental (for example, the 1976 swine flu vaccine) to fellow Christians,

and, therefore, wisdom decries my need to refrain from participation in covid-

19 vaccination.

g.  The short-term and long-term effects of the covid-19 vaccine have yet to be

fully proven, and therefore wisdom decries my need to refrain from

participation."

25.   On October 7, 2021, the NCH Committee denied Donna's request stating that, "evidence

presented for your exemption included pseudo-scientific, political or socially based

reasons or personal preferences, rather than a 'sincerely held' religious belief as defined

under Title VII."

26.   On the exemption form, the Defendants suggest that an accommodation may be

additional testing.  However, Donna had also successfully worked remotely.

27.   Upon information and belief, the Defendants granted an accommodation to at least one

employee who requested an accommodation for a disability.  Furthermore, upon

information and belief, the stated disability is not a known contraindication for the vaccine.

28. Despite being able to work remotely, and despite the Defendants suggesting that an accommodation would include additional testing, Defendants refused to engage with Donna in the accommodation process regarding either her disability or sincerely held religious beliefs.

29. Because she could not take the vaccine due to her disability and sincerely held religious beliefs, Defendants told her that she either needed to resign or that she would be terminated if she did not resign.  Because she would lose her benefits if she was terminated, but she would not if she resigned, she had no choice, but to resign. Therefore, on October 11, 2021, Donna involuntarily resigned.

30. As a proximate result of the Defendants' malicious, or at least, reckless violation of Donna's human rights, Donna has suffered losses, including, but not limited to, lost wages, lost earning capacity, lost employment benefits, pain and suffering, emotional distress, humiliation, damage to her reputation, inconvenience, loss of enjoyment of life, attorney's fees and costs, and other losses.

<u>CLAIMS</u>

<u>Count I</u>
(Failure to Accommodate – ADA)

31. Donna incorporates by reference, and realleges, all previous paragraphs of the Complaint.

32. Donna informed Defendants that she was diagnosed with PSVT, and that she is in danger of congestive heart failure and/or angina if other disorders develop.  She also informed the Defendants that the condition causes her to become light headed, and can cause her to pass out.  The condition, when triggered, affects Donna's ability to work, stand, sit, and

other major life activities.  If her condition progresses to heart failure or angina, it would also affect breathing, blood circulation, and remaining alive.  Therefore, PSVT is a disability as intended by the ADA.

33.     Donna further informed her employer that the risks of myocarditis and pericarditis are significant for her because of her existing disability.

34.     Donna requested the reasonable accommodation of an exemption from having to take the vaccine.  In such case, according to Defendants' policy, she would have been subject to additional testing requirements as an accommodation.  Alternatively, she could have worked remotely, as she had successfully done before.

35.     Defendants refused to engage with her in the interactive process regarding her request and simply denied her request claiming that her disability is, "not related to recognized risks of vaccination and do not make you ineligible to receive covid-19 vaccines."

36.     Had Defendants provided Donna the necessary accommodation, it would have resolved the issue of having to get the vaccine, and she could have performed the essential functions of her job.

37.     The ADA requires that an employer engage in the interactive process with a qualified employee, and to provide a reasonable accommodation unless doing so would create an undue hardship on the employer.

38.     Defendants failed to engage in the interactive process with Donna, and they failed to provide her any type of accommodation.

39.     As a proximate result of Defendants' malicious, or at least, reckless violation of Donna's human rights, Donna has suffered damages, including, but not limited to, lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation,

inconvenience, loss of enjoyment of life, pain and suffering, attorney's fees and costs, and other damages.

## Count II
### (Failure to Accommodate – Title VII)

40.  Donna incorporates by reference, and realleges, all previous paragraphs of the Complaint.

41.  Donna informed Defendants that she is a Christian, and she provided multiple reasons why she could not take the vaccine due to her sincerely held beliefs as a Christian, and she also offered reasons that she could not, in good conscience, take the vaccine.

42.  Donna requested the reasonable accommodation of an exemption from having to take the vaccine.  In such case, according to Defendants' policy, she would have been subject to additional testing requirements as an accommodation.  Alternatively, she could have worked remotely.

43.  Had Defendants provided Donna the necessary accommodation, it would have resolved the issue of having to get the vaccine, and she could have performed the essential functions of her job.

44.  Title VII requires that an employer engage in the interactive process of reasonably accommodating an employee with sincerely held religious beliefs, unless doing so would create an undue hardship for the employer.

45.  Defendants failed to engage in the interactive process with Donna, and they failed to provide her any type of accommodation.

46.  As a proximate result of Defendants' malicious, or at least, reckless violation of Donna's human rights, Donna has suffered damages, including, but not limited to, lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation,

inconvenience, loss of enjoyment of life, pain and suffering, attorney's fees and costs, and other damages.

## Count III
### (Wrongful Termination – ADA)

47.     Donna incorporates by reference, and realleges, all previous paragraphs of the Complaint.

48.     Donna informed Defendants that she was diagnosed with PSVT, and that she is in danger of congestive heart failure and/or angina if other disorders develop.  She also informed the Defendants that the condition causes her to become light headed, and can cause her to pass out.  The condition, when triggered, affects Donna's ability to work, stand, sit, and other major life activities.  If her condition progresses to heart failure or angina, it would also affect breathing, blood circulation, and remaining alive.  Therefore, PSVT is a disability as intended by the ADA.

49.     Donna further informed her employer that the risks of myocarditis and pericarditis are significant for her because of her existing disability.

50.     Donna requested the reasonable accommodation of an exemption from having to take the vaccine.  In such case, according to Defendants' policy, she would have been subject to additional testing requirements as an accommodation.  Alternatively, she could have worked remotely, as she had successfully done before.

51.     Defendants refused to engage with her in the interactive process regarding her request and simply denied her request claiming that her disability is "not related to recognized risks of vaccination and do not make you ineligible to receive covid-19 vaccines."

52. Had Defendants provided Donna the necessary accommodation, it would have resolved the issue of having to get the vaccine, and she could have performed the essential functions of her job.

53. The ADA requires that an employer engage in the interactive process with a qualified employee, and to provide a reasonable accommodation unless doing so would create an undue hardship on the employer.

54. Defendants failed to engage in the interactive process with Donna, and they failed to provide her any type of accommodation.

55. Because the Defendants would not provide Donna a reasonable accommodation, they told her that they would terminate her, or she could resign.  If she was terminated, she would lose certain benefits.  Therefore, she was forced to resign.

56. Because Donna was forced to resign, her resignation is actually a wrongful constructive discharge.  The ADA prohibits wrongful termination.

57. As a proximate result of Defendants' malicious, or at least, reckless violation of Donna's human rights, Donna has suffered damages, including, but not limited to, lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience, loss of enjoyment of life, pain and suffering, attorney's fees and costs, and other damages.

<u>Count IV</u>
(Wrongful Termination – Title VII)

58.   Donna incorporates by reference, and re-alleges, all previous paragraphs of the

Complaint.

59.   Donna informed Defendants that she is a Christian, and she provided multiple reasons

why she could not take the vaccine due to her sincerely held beliefs as a Christian, and

she also offered reasons that she could not, in good conscience, take the vaccine.

60.   Donna requested the reasonable accommodation of an exemption from having to take the

vaccine.  In such case, according to Defendants' policy, she would have been subject to

additional testing requirements as an accommodation.  Alternatively, she could have

worked remotely.

61.   Had Defendants provided Donna the necessary accommodation, it would have resolved

the issue of having to get the vaccine, and she could have performed the essential

functions of her job.

62.   Title VII requires that an employer engage in the interactive process of reasonably

accommodating an employee with sincerely held religious beliefs, unless doing so would

create an undue hardship for the employer.

63.   Defendants failed to engage in the interactive process with Donna, and they failed to

provide her any type of accommodation.

64.   Because the Defendants would not provide Donna a reasonable accommodation, they told

her that they would terminate her, or she could resign.  If she was terminated, she would

lose certain benefits.  Therefore, she was forced to resign.

65.   Because Donna was forced to resign, her resignation is actually a wrongful constructive

discharge.  Title VII prohibits wrongful termination.

66.    As a proximate result of Defendants' malicious, or at least, reckless violation of Donna's human rights, Donna has suffered damages, including, but not limited to, lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience, loss of enjoyment of life, pain and suffering, attorney's fees and costs, and other damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant the following relief:

A.    Award Plaintiff all of her Compensatory Damages for Defendants' violations of the ADA;

B.    Award the Plaintiff punitive damages against the Defendants for their violations of ADA;

C.    Award the Plaintiff all of her lost wages, including back and future lost wages, for the Defendants' violations of the ADA;

D.    Award the Plaintiff her Attorney's Fees and Costs incurred resulting from Defendants' violations of the ADA, pursuant to 42 U.S.C. §1988;

E.    Award the Plaintiff her Compensatory Damages for the Defendants' violations of Title VII;

F.    Award the Plaintiff all of her lost wages, including, back and future lost wages, for the Defendants' violations of Title VII;

G.    Award the Plaintiff her attorney's fees and costs incurred resulting from Defendants' violations of Title VII, pursuant to 42 U.S.C. §1988.

H.    Award the Plaintiff punitive damages against the Defendants for their violations of Title VII;

I.      Award the Plaintiff all further relief that this Honorable Court deems just and proper.

**<u>Jury Demand</u>**
Plaintiff hereby demands a jury trial for claims so triable.


Dated:  November 8, 2022                        Respectfully submitted,
                                                Donna Godin,
                                                By, The Law Offices of
                                                Martin & Hipple, PLLC



                                                 _/s/Stephen T. Martin_____
                                                Stephen T. Martin, Esq.
                                                390 Loudon Road
                                                Concord, NH 03301
                                                603-856-0202 (Ext. 1)
                                                smartin@nhlegalservices.com
                                                NH Bar#: 19567